**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>**PAZZO PAZZO, INC.,**<br><br>**Chapter 11, Debtor,** | |
| In re:<br><br>**BERLEY ASSOCIATES, LTD.,**<br><br>**Chapter 11, Debtor,** | **ON APPEAL FROM ORDERS OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** |
| **SPEEDWELL VENTURES, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**BERLEY ASSOCIATES, LTD., and PAZZO PAZZO, INC.,**<br><br>**Defendants/Third-Party Plaintiffs,**<br><br>v.<br><br>**62-74 SPEEDWELL AVE, LLC,**<br><br>**Third-Party Defendant/Fourth-Party Plaintiff,**<br><br>v.<br><br>**STEWART TITLE GUARENTY CO.,**<br><br>**Fourth-Party Defendant.** | **Bankruptcy Nos. 18-13516, 18-13914 (JKS)**<br><br>**Bankruptcy Adversary No. 18-1216 (JKS)**<br><br>**Civil Action Nos. 19-21633, 21-15548 (ES)**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

In civil action number 19-21633, 62-74 Speedwell Ave, LLC ("62-74") appeals the Bankruptcy Court's decision granting Stewart Title Guaranty Corp.'s ("Stewart") motion for summary judgment.  In civil action number 21-15548, Speedwell Ventures, LLC ("Speedwell") challenges the Bankruptcy Court's decision granting 62-74's motion to voluntarily dismiss its crossclaims.  Because the genesis of these appeals is the same, the Court decides both in this single Opinion, and does so without oral argument.  *See* Fed. R. Bankr. P. 8019(b)(3).  For the following reasons, the Court **AFFIRMS** both of the Bankruptcy Court's decisions.

I.      BACKGROUND

These appeals concern claims for indemnity and defense costs related to a dispute about real property located at 62-74 Speedwell Avenue in Morristown, New Jersey (the "Property").  In particular, 62-74 purchased the Property from Speedwell.  Its title was challenged by Berley Associates, Ltd. ("Berley") and Pazzo Pazzo, Inc. ("Pazzo")—a former owner and a former lessee of the Property, respectively—in their respective Chapter 11 bankruptcy petitions.  In response, 62-74, among other things, filed crossclaims against Speedwell and a fourth-party complaint against Stewart.  In both actions, 62-74 claimed a right to indemnification.  To better contextualize these disputes, the Court first outlines the facts of the related dispute over the Property, and then the facts more particularly related to the indemnity claims and the Bankruptcy Court's decisions.

A.      The Property Dispute

Berley previously owned the Property and leased it to an affiliated entity, Pazzo, to operate an Italian restaurant.  (Civ. No. 19-21633, D.E. Nos. 3-1 to 3-3, Appendix on Appeal, Volumes I to III ("19-21633 App'x") at 204).  After Berley filed a Chapter 11 bankruptcy petition in 2012, Berley sold the Property to one of its secured creditors, Lenox Hill Investors, LLC, as part of its

reorganization.  (*Id.* at 230).  Pursuant to the sale, Berley retained an option to purchase the Property at a set price.  (*Id.* at 236).  After Lenox Hill Investors assigned its interest to Speedwell, Speedwell and Berley executed a separate option contract for the purchase of the Property.  (*Id.* at 243).

Pursuant to the option and lease agreements, Speedwell could, upon termination of the lease, demand that Berley exercise its right to purchase the Property within thirty days.  (*Id.* at 245).  The lease terminated ten days after Speedwell gave Pazzo a notice terminating the lease. (*Id.* at 217).  Speedwell could issue a notice terminating the lease upon "an event of default," which included "abandonment, vacation or desertion of the" Property.  (*Id.* at 216–17).  Thus, taken together, if Pazzo abandoned or vacated the Property, then Speedwell could issue Pazzo a termination notice, after which the lease would terminate in ten days; Speedwell could then issue Berley a notice demanding it exercise its right to purchase the Property within thirty days.

On June 9, 2017, Speedwell sought to terminate the lease for, among other things, Pazzo abandoning and vacating the Property.  (*Id.* at 256).  The June 9 notice also served as a notice demanding Berley exercise its right to purchase the Property within thirty days after "the termination of the Lease." (*Id.*).  Berley did not exercise its right to purchase the Property, and on August 1, 2017, counsel for Speedwell sent a notice to Berley indicating that the option had lapsed. (*Id.* at 258–61).  On August 18, 2017, the discharge of the option was recorded in the Morris County Clerk's Office.  (*Id.* at 263–65).  Thereafter, Speedwell sold the Property to Scotto Holdings, LLC ("Scotto"), which formed 62-74 to assign its interest in the Property.  (*Id.* at 188 & 478).

Months later, on February 23 and 28, 2018, Pazzo and Berley separately filed for relief pursuant to Chapter 11 of the Bankruptcy Code.  (*Id.* at 23 & 28).  In their asset schedules, Pazzo

listed the lease and Berley listed the option. (*Id.* at 38). On May 2, 2018, Speedwell filed a complaint seeking a declaratory judgment that neither the lease nor the option belonged to the bankruptcy estates. (*Id.* at 79–80). On June 21, 2018, Pazzo and Berley filed an answer and countercomplaint against Speedwell, and a third-party complaint against 62-74. (*Id.* at 300). The countercomplaint and third-party complaint raised two identical counts for relief: Count one sought to "set[] aside the transfer and termination of the Option as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B)"; and count two sought a declaration that the lease "is an executory contract or unexpired lease of the debtor that Pazzo . . . may assume or reject pursuant to 11 U.S.C. § 365." (*Id.* at 312, 314 & 318–19).

After holding a two-and-a-half-day bench trial, the Bankruptcy Court held that the lease was validly terminated for abandonment and vacation, placing its reasons on the record on March 11, 2019. (*Id.* at 370–71 & 373–93). On April 24, 2019, in a written opinion, the Bankruptcy Court held that the option was not recoverable as a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) because Berley's failure to exercise its right to purchase the Property was not a "transfer" of the Property within the meaning of Bankruptcy Code. (*Id.* at 400–02); *see also In re Pazzo Pazzo, Inc.*, No. 18-13516, 2019 WL 1858845, at *2–3 (Bankr. D.N.J. Apr. 24, 2019). Pazzo and Berley appealed both rulings.

On June 18, 2021, the Court affirmed the Bankruptcy Court. *See Pazzo Pazzo, Inc. v. Speedwell Ventures, LLC*, No. 18-15361, 2021 WL 2493487 (D.N.J. June 18, 2021). In particular, the Court held that the Bankruptcy Court did not commit clear error in finding that Pazzo abandoned or vacated the Property. *Id.* at *5–6. The Court also held that the option was not recoverable as a fraudulent conveyance because a naturally expired right to buy property is not a

transfer of that property within the meaning of Bankruptcy Code. *Id.* at *6–9.  The Court's rulings are now on appeal to the Third Circuit.

### B.     The Indemnity Agreements

With that context in mind, the Court outlines the facts more particularly related to 62-74's purchase of the Property and the indemnity agreements it entered.

On December 22, 2017, just a few months after the option was discharged, Speedwell entered into a purchase and sale agreement to sell the Property to Scotto for $3,300,000.  (19-21633 App'x at 481).  The sale agreement represented that the lease and option were terminated. (*Id.* at 492).  But it provided that Speedwell and its principal, Jack Zakim, would indemnify, defend, and hold harmless Scotto for all claims asserted against Scotto related to the lease or option to the extent title insurance did not cover the claims.  (*Id.* at 500).

On February 2, 2018, Speedwell and Scotto entered into an amended sale agreement.  (*Id.* at 266).  The amended sale agreement dropped the sale price by $300,000.  (*Id.* at 267).  The parties agreed that Speedwell and Zakim would indemnify, defend, and hold harmless Scotto for all claims asserted against Scotto related to the lease or option to the extent not covered by title insurance. (*Id.* at 269).  But the amended sale agreement changed the indemnification provision in several ways:

1. Speedwell and Zakim's indemnification obligations were indefinite, as opposed to just eighteen months;

2. Speedwell and Zakim no longer had to place $100,000 into an escrow account;

3. Speedwell and Zakim would be entitled to additional consideration—as much as $400,000—if it obtained a declaratory judgment that the lease and option were terminated;

4. Scotto had the right to compel Speedwell and Zakim to pursue a declaratory judgment action that the lease and option were terminated; and

5. Scotto would be entitled to a full refund if the lease and option were ever determined to be effective.

(*Id.* at 269–71).

On or around February 9, 2018, Scotto formed 62-74 to take title to the Property, and it assigned 62-74 the right to purchase the Property.  (*Id.* at 474).  The sale of the Property closed on or around February 14, 2018.  (*Id.* at 281–82).

On February 16, 2018, CB Title, an agent of Stewart, issued a policy of title insurance (the "Policy") that insured 62-74 in connection with the Property.  (*Id.* at 288).  Relevant here are two provisions of the Policy.  First, Exclusion 3(a) of the Policy excluded from coverage "3. [d]efects, liens, encumbrances, *adverse claims*, or other matters (a) created, suffered, *assumed or agreed to* by the Insured Claimant."  (*Id.* at 290 (emphasis added)).  Second, Exception 8 in Schedule B of the Policy excepted from coverage damages and costs "that arise by reason of . . . 8. [s]ubject to rights of tenants and/or lessees under unrecorded leases."  (*Id.* at 297).

### C.    Indemnity Claim against Stewart

After Berley and Pazzo filed their Chapter 11 petitions and asserted claims to recover the lease and option, 62-74 sought indemnification and a defense from Stewart.  In a letter dated July 6, 2018, Stewart denied 62-74's request for coverage relating to the lease, citing Exception 8 of the Policy for the rights of tenants of unrecorded leases, but granted 62-74's request for coverage relating to the option.  (*Id.* at 327–28).  However, in a letter dated October 16, 2018, Stewart denied coverage related to the option, citing Exclusions 3(a) and (b) of the Policy, effective October 26, 2018.  (*Id.* at 330–32).

In an amended fourth-party complaint, filed on May 24, 2019, 62-74 brought claims against Stewart for breach of contract, for bad faith, and for fraud under the New Jersey Consumer Fraud Act ("NJCFA").  (*Id.* at 151–57).  On July 16, 2019, Stewart filed a motion for summary judgment

on all claims in the amended fourth party complaint.  (*Id.* at 177).  On August 27, 2019, 62-74 cross-moved for summary judgment on all counts.  (*Id.* at 336).  The Bankruptcy Court held oral argument on the motions on October 15, 2019.  (*Id.* at 722).

On December 5, 2019, the Bankruptcy Court granted Stewart's motion for summary judgment and denied 62-74's motion.  (*Id.* at 4–22); *see also In re Pazzo Pazzo, Inc.*, No. 18-13516, 2019 WL 6699694 (Bankr. D.N.J. Dec. 5, 2019).  First, the Bankruptcy Court dismissed 62-74's breach-of-contract claim, holding that Stewart properly denied coverage under Exclusion 3(a) and Exception 8 of the Policy.  (19-21633 App'x at 16–19).  As for Exclusion 3(a), the Bankruptcy Court found it dispositive that the amended sale agreement between Speedwell, Zakim, and 62-74 contained a price concession of $300,000 and various indemnification provisions.  (*Id.* at 19).  "Having gone to such great lengths in the Amended Sale Agreement to address the risks posed by the Lease and the Option, and having secured significant financial concessions from Speedwell Ventures based on this risk, 62-74 agreed to and assumed the risk." (*Id.*).  As for Exception 8, the Bankruptcy Court explained that, even though Pazzo was no longer a tenant under the lease, Pazzo was ultimately seeking "to be restored as a tenant under the Lease." (*Id.* at 17).  "If Pazzo got what it was asking for," the Bankruptcy Court explained, "Exception 8 would apply because the Lease was not recorded."  (*Id.* at 17–18).  Second, the Bankruptcy Court dismissed 62-74's claim for bad faith because, even if Stewart improperly denied coverage, Stewart had a reasonable basis for doing so.  (*Id.* at 19–20).  Finally, the Bankruptcy Court dismissed 62-74's claim for fraud under the NJCFA.  (*Id.* at 20–22).  The Bankruptcy Court explained that Stewart could not have engaged in an unconscionable business practice because Stewart properly denied coverage.  (*Id.*).  The Bankruptcy Court alternatively held that the mere

denial of insurance coverage, even if improper, is not an unconscionable business practice under the NJCFA.  (*Id.*).

### D.        Indemnity Claim against Speedwell

After Berley and Pazzo pulled 62-74 into their bankruptcy matters, 62-74 also filed crossclaims against Speedwell on August 1, 2018, for contribution and indemnification.  (Civ. No. 21-15548, Record on Appeal ("21-15548 Rec."), Ex. 25 at 8–10).[1]  Almost two and a half years later, on January 8, 2021, 62-74 moved to voluntarily dismiss its crossclaims against Speedwell to pursue them in New Jersey Superior Court, where it intended to assert similar claims against Speedwell's principal, Zakim.  (*Id.*, Ex. 11).  On January 21, 2021, 62-74 filed suit against Zakim in New Jersey Superior Court.  (*Id.*, Ex. 10).  Berley, Pazzo, and Speedwell opposed 62-74's motion to voluntarily dismiss its crossclaims.  (*Id.*, Exs. 12–13).  On June 22, 2021, the Bankruptcy Court held oral argument on the motion, and did so again on August 3, 2021.  (*Id.*, Exs. 21 & 22).  In oral ruling on August 3, the Bankruptcy Court granted 62-74's motion.  (*Id.*, Ex. 21).  In particular, the Bankruptcy Court explained that the crossclaims raised state law issues concerning indemnification between two non-debtors, that the claims did not impact the bankruptcy estates in any way, that no discovery or motion practice had taken place in that particular dispute, that the Bankruptcy Court did not have experience with that particular aspect of the case, and that the same issues were being litigated in New Jersey Superior Court anyway.  (*Id.*, Ex. 21 at 29:12–30:17 & 31:11–13).

### E.        Appeals

62-74 timely appealed the Bankruptcy Court's summary judgment decision dismissing its claim against Stewart.  (Civ. No. 19-21633, D.E. No. 1).  Speedwell also timely appealed the

---

[1]        The record in civil action number 21-15548 was not filed on the docket.  Accordingly, the Court cites the record that was mailed to the Court without attribution to a docket number.

Bankruptcy Court's decision granting 62-74's motion to voluntarily dismiss its own claims against Speedwell.  (Civ. No. 21-155548, D.E. No. 1).  The Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 158(a)(1).

## II.    STANDARDS OF REVIEW & LEGAL STANDARDS

### A.    Summary Judgment

"A bankruptcy court's order granting summary judgment is reviewed *de novo*." *In Re LTC Holdings, Inc.*, 10 F.4th 177, 184 (3d Cir. 2021).  Federal Rule of Bankruptcy Procedure 7056 incorporates the summary judgment standards prescribed under Federal Rule of Civil Procedure 56.  *See* Fed. R. Bankr. P. 7056.  Under Rule 56(a), summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when— in viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant—a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing that no "genuine issue" of facts exists.  *Aman v. Cort Furniture Rental Cop.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  The standard for summary judgment is the same even if the ultimate trier of fact is the judge.  *See In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 433 n.10 (3d Cir. 1996).

### B.    Voluntary Dismissal

A bankruptcy court's decision to permit voluntary dismissal under Federal Rule of Bankruptcy Procedure 7041, which incorporates Federal Rule of Civil Procedure 41, is reviewed for an abuse of discretion.  *See Polansky v. Exec. Health Res. Inc*, 17 F.4th 376, 392 (3d Cir. 2021), *cert. granted sub nom. United States ex rel. Polansky v. Exec. Health Res., Inc.*, 142 S. Ct. 2834 (2022).  Rule 41(c) clarifies that Rule 41, with caveats not applicable here, applies to the dismissal

of crossclaims.  Fed. R. Civ. P. 41(c).  Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41.  "Courts have 'broad equitable discretion' in evaluating Rule 41."  *In re DB Holdings Liquidation, Inc.*, 592 B.R. 539, 546 (D. Del. 2018) (quoting *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160, 2012 WL 6629624, at *3 (Bankr. D. Del. Dec. 20, 2012)).

## III.   DISCUSSION

The Court first addresses 62-74's appeal in civil action number 19-21633, which concerns its claims for breach of contract, bad faith, and fraud.  The Court then addresses Speedwell's appeal in 21-15548, which concerns 62-74's voluntary dismissal.

### A.      62-74 Appeal

#### i.      Breach of Contract

The Bankruptcy Court dismissed 62-74's claim for breach of contract because Stewart properly denied coverage under Exclusion 3(a) and Exception 8 of the Policy.  Because Exclusion 3(a) is dispositive, the Court does not address Exception 8.

Exclusion 3(a) of the Policy is as follows:

> The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
>
> ***
>
> 3. Defects, liens, encumbrances, adverse claims, or other matters
>
>> (a) created, suffered, assumed or agreed to by the Insured Claimant.

(19-21633 App'x at 290).

Both parties agree that New Jersey law governs the interpretation of Exclusion 3(a), and that no New Jersey court has definitely resolved what it means to "assume" or "agree" to a defect,

10

lien, encumbrance, or adverse claim.  (Civ. No. 19-21633, D.E. No. 7 ("62-74 Appellant Br.") at 45–46; Civ. No. 19-21633, D.E. No. 8 ("Stewart Appellee Br.") at 26).  However, both parties agree, as does the Court, that the New Jersey Supreme Court would likely adopt the majority approach as expressed by the Sixth Circuit in *American Savings & Loan Ass'n v. Lawyers Title Insurance Corp.*, 793 F.2d 780 (6th Cir. 1986).  (62-74 Appellant Br. at 46; Stewart Appellee Br. at 27).

In *American Savings*, the Sixth Circuit explained that "an insured does not assume an assessment against property 'merely because he agreed to take the property "subject to" any assessments.'"  793 F.2d at 784 (quoting *Arizona Title Ins. & Tr. Co. v. Smith*, 21 Ariz. App. 371, 374, 519 P.2d 860, 863 (1974)).  "'Assume,' under this definition requires knowledge of the specific title defect assumed."  *Id.*  "And 'agreed to' carries connotations of 'contracted,' requiring full knowledge by the insured of the extent and amount of the claim against the insured's title."  *Id.*  Both terms, the Sixth Circuit explained, "impl[y] some degree of intent."  *Id.*

Applying these definitions, courts have held that policyholders do not necessarily intend to assume or agree to defects merely by being aware of them, particularly if there is additional record evidence suggesting they did not intend to assume or agree to the defects.  For example, in *American Savings*, the Sixth Circuit held that the policyholder did not assume or agree to a mechanics' lien, despite being aware of the possibility the lien could arise, because the policyholder negotiated removing a specific exclusion that would have clearly applied to the mechanics' lien.  *See id.* at 782–83.  Likewise, in *Dare Investments, LLC v. Chicago Title Insurance Co.*, the district court held summary judgment was improper on whether the policyholder assumed or agreed to a defect because the policyholder negotiated an exception to an exclusion that would have applied to the particular defect.  *See* No. 10-6088, 2011 WL 2600594,

at *11 (D.N.J. June 29, 2011).  "Exclusion 3(a)," the district court explained, was "ambiguous in the context of the broader title policy," because "Item 8 specifically excepts [the defect] as a bar to coverage with respect to the disclaimer under Exclusion 3(b), and the logic behind excepting that position with respect to Exclusion 3(b), but not Exclusion 3(a), remains unclear."  *Id.*

Meanwhile, courts have held that policyholders assume defects of which they are aware if they take deliberate steps to assume the risk.  For example, in *Pump Shop, Inc. v. Lawyers Title Insurance Corp.*, a Massachusetts appellate court held that a policyholder assumed a tax lien by being aware of it and acting "quite deliberately and with preparation, given that it entered into the separate indemnity agreement to protect itself from just such an eventuality."  946 N.E.2d 715 (Mass. App. Ct. 2011).  Similarly, in *Cynergy, LLC v. First American Title Insurance Co.*, the Eleventh Circuit held that a policyholder assumed the risk of a defect by being fully aware of it and appreciating its impact, as evidenced by the fact that the policyholder "required additional collateral for [its] loan, beyond the deed to the property itself, to offset the potentially diminished resale value of the land."  706 F.3d 1321, 1331 (11th Cir. 2013).

Applying these cases, the Bankruptcy Court held that 62-74 assumed the adverse claim brought by Pazzo and Berley for two reasons.  (19-21633 App'x at 18–19).  First, 62-74 received a significant price concession of $300,000 from Speedwell due to the risk posed by Pazzo and Berley.  (*Id.*).  Second, the amended sale agreement offered various protections to 62-74 against Pazzo and Berley.   (*Id.*).   Specifically, the amended sale agreement entitled 62-74 to indemnification from Speedwell and Zakim, provided Speedwell and Zakim a financial incentive to obtain a declaratory judgment that the lease and option were no longer effective, granted 62-74 a right to demand that Speedwell and Zakim pursue such a declaratory judgment, and granted 62-74 a right to a full refund if the option and lease were ever found to be effective.  (*Id.*).  "Having

gone to such great lengths in the Amended Sale Agreement to address the risks posed by the Lease and the Option, and having secured significant financial concessions from Speedwell Ventures based on this risk, 62-74 agreed to and assumed the risk." (*Id.* at 19).

The Court perceives no error in the Bankruptcy Court's analysis. As in *Pump Shop* and *Cynergy*, the record evidence clearly establishes that 62-74 took deliberate steps to assume the risk that Pazzo and Berley would assert adverse claims to revive the option and lease. 62-74 went to great lengths to secure a large financial concession and to otherwise mitigate the consequences of the potential claim. And unlike in *American Savings* and *Dare Investments*, there is no objective countervailing evidence suggesting that 62-74's affirmative steps were not intended to assume the risk posed by Pazzo and Berley.

62-74's counterarguments are not persuasive. First, 62-74 insists that there was no way for it to have known that that Berley and Pazzo would file Chapter 11 bankruptcy petitions to recover the lease and option. (62-74 Appellant Br. at 46; *see also id.* at 34–36 & 49; Civ. 19-21633, D.E. No. 11 ("62-74 Appellant Reply") at 1 & 9). But 62-74 cites no cases interpreting Exclusion 3(a) as turning on the forum of the claim. And 62-74 clearly was aware, and foresaw, the possibility that Berley and Pazzo would assert adverse claims to revive the lease and option. 62-74 negotiated a right to a full refund should the lease or option ever be found to be effective, as well as a right to demand that Speedwell and Zakim bring an action for a declaratory judgment that the lease and option were terminated. (19-21633 App'x at 269–71).

Second, 62-74 argues that a policyholder does not assume a risk merely by seeking an assurance against that risk materializing. (62-74 Appellant Br. at 47). As 62-74 points out, the Sixth Circuit in *American Savings* held that the policyholder "cannot be considered to have expressly created, suffered, assumed or agreed to mechanics' liens, when it sought assurances

against those liens, simply because those assurances turned out to be insufficient." 793 F.2d at 785. Quoting the Bankruptcy Judge at oral argument, 62-74 argues that, in obtaining a price concession and indemnification from Speedwell and Zakim, its lawyers were "just being, you know, lawyers and trying to cover every eventuality." (62-74 Appellant Br. at 47 (quoting 19-21633 App'x at 743, Tr. 22:21–23); *see also* 62-74 Appellant Reply at 12). However, the Bankruptcy Judge's statement, which was made in the context of asking Stewart's counsel a question, is not evidence. Moreover, unlike the policyholder in *American Savings*, 62-74 did much more than seek assurances that a risk would not materialize. Instead, the record decisively shows that it took deliberate steps to assume the risk and mitigate its consequences. *See Cynergy*, 706 F.3d at 1331; *Pump Shop*, 946 N.E.2d 715. Also, unlike the policyholder in *American Savings*, there is no countervailing evidence suggesting an intent not to assume the risk. *See* 793 F.2d at 782–83.

Third, 62-74 argues that the Bankruptcy Court should not have granted summary judgment without permitting the parties first to engage in discovery. (62-74 Appellant Br. at 36). However, as Stewart points out, 62-74 "did not oppose [its] motion [to the Bankruptcy Court] on the basis that it lacked sufficient discovery to respond." (Stewart Appellee Br. at 15 (citing 19-21633 App'x at 336); *see also id.* at 17, 37 & 40–42). 62-74 did not file a Rule 56(d) affidavit specifying what discovery it sought and how, if at all, it would preclude summary judgment. (*Id.* at 40–42). "Except in rare cases, 'failure to comply with [Rule 56(d)] is fatal to a claim of insufficient discovery on appeal.'" *Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 214 (3d Cir. 2017) (alternation in original) (quoting *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002)). This is not a rare case to excuse 62-74's failure to comply with Rule 56(d). 62-74 still does not specify what discovery might reveal. And the central issue in this case—whether 62-74 assumed the

adverse claims brought by Pazzo and Berley—concerns evidence that is likely exclusively in 62-74's possession.  Moreover, 62-74 cross-moved for summary judgment, effectively inviting the Bankruptcy Court to rule without having the parties first engage in discovery.  Accordingly, any argument made for the first time on appeal concerning the lack of discovery is waived.[2]

Finally, 62-74 also argues that the Bankruptcy Court failed to consider whether Stewart breached its obligation to defend 62-74 prior to terminating coverage on October 26, 2018.  (62-74 Appellant Br. at 56–59).  As noted above, Stewart initially agreed to defend claims relating to the option but later terminated coverage, citing Exclusions 3(a) and (b) of the Policy, effective October 26, 2018.  (19-21633 App'x at 327–28 & 330–32).  62-74 contends that Stewart did not provide a defense as initially promised and thus "breached its contractual agreement to assume coverage and tender a defense on behalf of 62-74 Speedwell through October 26, 2018."  (62-74 Appellant Br. at 58).

However, Stewart's initial grant of coverage was conditional:  It "[wa]s not an admission of liability" or "a waiver of any provision of the Policy"; Stewart "reserve[d] the right to limit or deny coverage and to withdraw the defense . . . should additional facts or information arise that place the causes of action . . . outside the scope of the coverages provided by the Policy"; and Stewart cited Exclusion 3(a) as a potential basis to deny coverage in the future.  (19-21633 App'x at 328).  And as Stewart points out, 62-74 "[n]otably . . . does not cite a single case to support the proposition that an insurer can be liable either (1) for breach of an insurance contract where no coverage exists or (2) for bad faith where no coverage exists."  (Stewart Appellee Br. at 47).  62-74 points to no provision in the *Policy* that Stewart breached by failing to provide a defense before

---

[2]      62-74 argues that Stewart's "Rule 56(d) arguments are inapplicable to this instant appeal" because 62-74 "could not have anticipated the Bankruptcy Court['s] rulings.  (62-74 Appellant Reply at 15 n.2).  However, 62-74 cites no law suggesting there is a failure-to-anticipate exception to Rule 56(d).

October 16, 2018.  Nor does 62-74 cite any prejudice it suffered as a result of Stewart's failure to provide a defense to which it was never entitled.  In fact, any delay in defense does not appear to have impacted 62-74 at all.  62-74 retained able counsel who, so far, has defeated Pazzo's and Berley's claims.

The Bankruptcy Court did not err in granting summary judgment to Stewart on 62-74's claim for breach of contract.

### ii.    Bad Faith

The Bankruptcy Court dismissed 62-74's claim for bad faith because, even if Stewart improperly denied coverage, Stewart had a reasonable basis for doing so.  (19-21633 App'x at 19–20).  The Court agrees.

"Under New Jersey law, to establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim."  *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004) (citing *Pickett v. Lloyd's*, 621 A.2d 445, 454 (N.J. 1993)).  To meet the "fairly debatable" standard, a plaintiff

> must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails.  In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith.

*Id.* (citing *Pickett*, 621 A.2d at 454).  Thus, dismissal of the bad faith claim is proper when the insured cannot prevail on summary judgment for the underlying insurance claim.  *Id.*; *see also Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401–02 (D.N.J. 2000); *Dare Invs.*, 2011 WL 2600594, at *12.

16

Because the Bankruptcy Court properly granted summary judgment to Stewart on 62-74's breach-of-contract claim, the Bankruptcy Court properly held there was no basis to conclude that Stewart denied coverage in bad faith.  62-74 does not appear to argue otherwise.  Instead, it argues that the Bankruptcy Court's decision on its bad faith claim should be reversed if the Court agrees there are genuine disputes of material fact regarding its claim for breach.  (62-74 Appellant Br. at 52–54).  However, even if the Court so concluded, the Bankruptcy Court denied 62-74's cross-motion for summary judgment on the substantive claim for coverage.  (19-21633 App'x at 15–16 & 19–20).  In doing so, the Bankruptcy Court necessarily held, in the alternative, that Stewart had a reasonable basis for denying coverage.  The Court perceives no basis to disturb that holding.

### iii.    NJCFA

The Bankruptcy Court dismissed 62-74's claim for fraud under the NJCFA because there was no reasonable basis to conclude that Stewart engaged in an unconscionable business practice in the absence of a claim that Stewart improperly denied coverage.  (19-21633 App'x at 20–22).  The Bankruptcy Court alternatively held that the mere denial of insurance coverage, even if improper, is not an unconscionable business practice under the NJCFA.  (*Id.*).

Enacted in 1960, the NJCFA is remedial legislation aimed at correcting and deterring harm caused by "unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate."  *Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1075 (N.J. 2009) (quoting *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978)).  To that end, the NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate."  N.J.S.A § 56:8-2.  The NJCFA "sets

17

forth three general categories of unlawful acts: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790–91 (N.J. 2005).

Because the Bankruptcy Court properly granted summary judgment to Stewart on 62-74's breach-of-contract claim, the Bankruptcy Court correctly held there was no basis to conclude that Stewart engaged in an unconscionable business practice under the NJCFA.  62-74 does not appear to argue otherwise.  Instead, 62-74 challenges the Bankruptcy Court's alternative holding that the mere denial of insurance coverage, even if improper, is not an unconscionable business practice under the NJCFA.  (62-74 Appellant Br. at 54–55).  In making this argument, 62-74 points out that the "Third Circuit [has] 'predicted that the New Jersey Supreme Court would hold that the CFA covers "fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations)."'" (*Id.* at 55 (quoting *Alpizar-Fallas v. Favero*, 908 F.3d 910, 916 (3d Cir. 2018) (quoting *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 266 (3d Cir. 2007)))).  However, because there is no genuine dispute of fact that Stewart properly terminated coverage, the Court need not address the scope of *Alpizar-Fallas* and *Weiss*.

Accordingly, the Court affirms the Bankruptcy Court's decision granting Stewart summary judgment on all claims against it.

## B.    Speedwell's Appeal

Speedwell challenges the Bankruptcy Court's decision permitting voluntary dismissal of 62-74's crossclaims.  As explained above, 62-74 filed crossclaims against Speedwell on August 1, 2018, for contribution and indemnification.  (21-15548 Rec., Ex. 25 at 8–10).  On January 8, 2021, 62-74 moved to voluntarily dismiss its crossclaims against Speedwell to pursue them in New

Jersey Superior Court—where it intended to, and later did, assert similar claims against Speedwell's principal, Zakim.  (*Id.*, Exs. 10 & 11).  On January 21, 2021, 62-74 filed suit against Zakim in New Jersey Superior Court, and the Bankruptcy Court granted 62-74's motion over Speedwell's objection on August 3, 2021.  (*Id.*, Ex. 21).  Discerning no abuse of discretion, the Court affirms.

With caveats not applicable here, Rule 41 applies to the dismissal of crossclaims.  Fed. R. Civ. P. 41(c).  Under Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41.  "Courts have 'broad equitable discretion' in evaluating Rule 41."  *DB Holdings Liquidation*, 592 B.R. at 546 (quoting *Appleseed's Intermediate Holdings*, 2012 WL 6629624, at *3; *see also Polansky*, 17 F.4th at 393 (referring to "Rule 41(a)(2)'s 'broad grant of discretion'" (quoting *Carroll v. E One Inc*, 893 F.3d 139, 146 (3d Cir. 2018)))).  "Courts in this District consider multiple factors when deciding a voluntary dismissal motion under Rule 41(a)(2), including '(1) the expense of a potential second litigation; (2) the effort and expense incurred by defendant in preparation for trial in the present case; (3) the extent to which the case has progressed; and (4) plaintiff's diligence in bringing the motion to voluntarily dismiss.'"  *Mason v. Johnson & Johnson Consumer Inc.*, No. 21-10222, 2022 WL 605717, at *2 (D.N.J. Mar. 1, 2022) (quoting *Shamrock Creek, LLC. v. Borough of Paramus*, No. 12-2716, 2015 WL 3902307, at *2 (D.N.J. June 23, 2015)).  Crucially, "a motion for dismissal 'should not be denied absent substantial prejudice to the defendant.'"  *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 255 (D.N.J. 2001) (quoting *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 728 F. Supp. 1142, 1146 (D.N.J. 1990)). "Notably, neither the 'mere prospect of a second lawsuit' nor the fact that the plaintiff 'may gain some tactical advantage by a voluntary dismissal' is sufficient on its own to constitute prejudice

to the defendant." *Mason*, 2022 WL 605717, at *2 (quoting *Selby v. Inspira Med. Ctrs., Inc.*, No. 18-9675, 2018 WL 6696775, at *1 (D.N.J. Dec. 19, 2018)).  The Third Circuit indeed has a "liberal policy" in favor of granting voluntary dismissal.  *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990).

The Bankruptcy Court did not abuse its broad grant of discretion in granting 62-74's motion to voluntarily dismiss its crossclaims against Speedwell.  There is no record evidence that Speedwell will be prejudiced, let alone "significantly prejudiced," *Paoli R.R. Yard PCB Litig.*, 916 F.2d at 863, by having to litigate the matter in state court.  As the Bankruptcy Court explained, the crossclaims concern state law claims for indemnification between two non-debtors that have no impact on the bankruptcy estates.  (21-15548 Rec., Ex. 21 at 29:12–30:17 & 31:11–13).  Speedwell thus has no interest in the Bankruptcy Court's expertise being applied to the matter.  The Bankruptcy Court also pointed out there were little efficiencies in keeping the matter.  No discovery or motion practice had taken place with respect to the crossclaims, the Bankruptcy Court had no experience with the crossclaims, and the same issues were being litigated in an identical dispute in New Jersey Superior Court.  (*Id.*).  If anything, it would be a waste of judicial resources to force 62-74 to litigate its identical claims in two fora.

Speedwell's counterarguments are not persuasive.  First, Speedwell points out that the parties have invested considerable resources in the larger bankruptcy dispute—in terms of time and money dedicated to discovery and motion practice.  (Civ. No. 21-15548, D.E. No. 6 ("Speedwell Appellant Br.") at 29–30).  But as 62-74 points out, Speedwell conflates the work the parties have done in the bankruptcy matter with the work they have not done with the crossclaims. (Civ. No. 21-15548, D.E. No. 7 ("62-74 Appellee Br.") at 18–19).  The parties engaged in no discovery or motion practice with respect to the particular crossclaims that were being dismissed,

so the Bankruptcy Court did not abuse its broad grant of discretion in weighing this factor in favor of voluntary dismissal. *See Paoli R.R. Yard PCB Litig.*, 916 F.2d at 863 ("Although defendants have invested a good deal of time in this suit, the vast majority of their argument attacks the plaintiffs' theories of causation, exposure and non-physical injury. There is no indication that defendants invested significant amounts of time in the specific issue germane to the amendment, i.e., the Butler plaintiffs' physical injuries, and that they will therefore be prejudiced if the Butler plaintiffs eliminate their physical personal injury claims from their complaint.").

Second, Speedwell argues 62-74's motion for voluntary dismissal was impermissible forum shopping. (Speedwell Appellant Br. at 27 & 32–33). However, the Undersigned has rejected similar arguments where, as here, "[t]here is no evidence that [the moving party] intends to forum shop by filing his Rule 41 [m]otion." *Smith v. City of Plainfield*, No. 15-7258, 2016 WL 4402812, at *4 (D.N.J. Aug. 15, 2016). While 62-74 filed its motion with the "stated intention to re-file this precise action in New Jersey Superior Court," Speedwell "do[es] not explain how litigating this action in state court would be more favorable to" 62-74. *Id.* The Bankruptcy Court would have applied New Jersey law to the crossclaims, and there is no evidence that litigating in New Jersey state court, as opposed to New Jersey federal court, would be inconvenient to Speedwell but convenient to 62-74.

Third, Speedwell argues that the Bankruptcy Court should not have weighed the state court case in favor of dismissal because 62-74 consented to the Bankruptcy Court's jurisdiction over all non-core matters related to indemnification. (Speedwell Appellant Br. at 40–41). But even if 62-74 impliedly consented to jurisdiction over the indemnification dispute with Zakim, and it is not clear that 62-74 did so, the indemnification dispute was nevertheless in state court. In light of that

reality, the Bankruptcy Court did not abuse its broad grant of discretion in weighing the state court action in favor of dismissal.

Fourth, Speedwell argues that the Bankruptcy Court improperly relied on the fact that Zakim declined to remove the state court matter to the Bankruptcy Court. (Speedwell Appellant Br. at 42–43). But Speedwell does not explain why that factor was an improper consideration. The Bankruptcy Court noted the lack of removal as further evidence that it was more efficient to litigate the state law issue between non-diverse parties in state court.

Fifth, Speedwell argues that 62-74's related dispute with Stewart bears on its duty to indemnify 62-74. (Speedwell Appellant Br. at 24, 29 & 31–32). However, 62-74's dispute with Stewart is still distinct from its dispute with Speedwell, and Speedwell has not explained why it would be prejudiced by having to inform the New Jersey Superior Court as to the status of the Stewart matter.

Sixth and finally, Speedwell argues that the Bankruptcy Court violated the first-to-file rule by dismissing the earlier-filed action to permit the later-filed action to proceed. (Speedwell Appellant Br. at 35–38). However, as 62-74 points out, Speedwell did not make this argument to the Bankruptcy Court. (62-74 Appellee Br. at 22–23). Arguments concerning the first-to-file rule are therefore waived. *See In re Culp*, 681 F. App'x 140, 144 n.15 (3d Cir. 2017) ("They have not, however, cited any part of the record demonstrating where, in relation to the sale motion, this issue was raised, briefed, argued, and ruled on by the Bankruptcy Court. Issues not preserved in the lower courts cannot be reviewed on appeal. We do not consider issues that were not raised below."); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 209 (3d Cir. 2010) ("But Kelson

22

did not raise this claim in the Bankruptcy Court, and we will not consider new claims for the first time on appeal.").[3]

In sum, the Bankruptcy Court did not abuse its broad grant of discretion in granting 62-74's motion for voluntary dismissal.  The Bankruptcy Court dismissed a state law dispute between non-diverse parties that had no impact on the bankruptcy estates.  No discovery or motion practice had taken place in the matter, and an identical matter was bound to be litigated in state court.  There is no evidence that Speedwell will suffer prejudice by litigating the matter in the same state and a more appropriate forum.

## IV.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision granting summary judgment in favor of Stewart is **AFFIRMED**.  The Bankruptcy Court's decision dismissing 62-74's crossclaims is also **AFFIRMED**.  Appropriate Orders follow.

Date:   August 25, 2022

_____
Hon. Esther Salas, U.S.D.J.

---

[3]       The Court is especially inclined to hold Speedwell to the arguments actually made to the Bankruptcy Court in light of the difficulty in applying the first-to-file rule to a pending state court action involving a non-party.  The first-to-file rule authorizes a court "to enjoin the subsequent prosecution of proceedings involving the *same parties* and the same issues already before another district court."  *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971–92 (3d Cir. 1988) (emphasis added).  And "the majority of case law suggests that the first-filed rule, regardless of subject matter of the proceedings, is only applicable between federal courts and not with state courts."  *In re Tarragon Corp.*, No. 09-10555, 2009 WL 2244598, at *8 (Bankr. D.N.J. July 27, 2009); *see also Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 387 (D.N.J. 2015) (explaining that "this issue has not been addressed by the Third Circuit" and holding that the rule does not apply to pending state court matters).  The Court will not countermand the Bankruptcy Court's exercise of discretion based on arguments not made below.